UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| AALIYAH BRESHAY TAYLOR,<br><br>　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action Number<br>)  **4:20-CV-1545-AKK**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Aaliyah Taylor brings this action under 42 U.S.C. § 405(g) of the Social Security Act seeking review of the final adverse decision of the Acting Commissioner of the Social Security Administration. Doc. 1. Taylor asserts that the ALJ's decision, which has become the final decision of the Acting Social Security Commissioner, failed to give Taylor's Veterans Affairs disability rating proper weight and was not based on substantial evidence. *See* doc. 12 at 2. After a careful review, however, the court must affirm the ALJ's decision.

**I.**

Taylor, who previously worked as a culinary specialist in the military, applied for Social Security Disability Insurance benefits on November 8, 2018, claiming a disability onset of April 30, 2018, on the basis of depression, anxiety, post-traumatic

stress disorder, personality disorder, paranoia, Osgood-Schlatter disease, bilateral patellofemoral pain syndrome, bilateral foot pain, anemia, GERD, and tinnitus. Doc. 12 at 1–2; R. 169. After Taylor's claim was denied, an ALJ held a video hearing with Taylor's attorney and a vocational expert. R. 169. Taylor did not attend because she was in a Veterans Affairs residential facility at the time of the hearing. Doc. 12 at 2. The ALJ entered a decision finding that Taylor was not disabled, R. 166, and the SSA Appeals Council denied Taylor's request for review, rendering the ALJ's decision the final decision of the Acting Commissioner, R. 1. Taylor filed this petition for review pursuant to 42 U.S.C. § 405(g). Doc. 1.

## II.

On review, the court may evaluate only whether the record contains substantial evidence to sustain the ALJ's decision and whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Under 42 U.S.C. §§ 405(g) and 1383(c), the Commissioner's factual findings are conclusive if they are supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The threshold for this evidentiary sufficiency "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

(2019). Rather, substantial evidence falls somewhere between a "scintilla" and a "preponderance of evidence." *Martin*, 894 F.2d at 1529; *Moore*, 405 F.3d at 1211. If substantial evidence supports the Commissioner's factual findings, then the court must affirm, even if the evidence preponderates against those findings. *See id.*; *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020).

When determining whether substantial evidence supports the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. *Noble*, 963 F.3d at 1323; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Despite this limited scope of review, however, the court must not automatically affirm the decision of the Commissioner. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Bloodsworth*, 703 F.2d at 1239 (reviewing courts are not to "act as automatons"). Moreover, courts review de novo the legal conclusions upon which the Commissioner's decision is based. *Martin*, 894 F.2d at 1529; *Moore*, 405 F.3d at 1211.

## III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). A physical or mental impairment

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Determinations of disability require a five-step analysis in which the ALJ determines, in order:

(1) whether the claimant is currently unemployed;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals one listed by the Commissioner;
(4) whether the claimant is unable to perform his or her past work; and
(5) whether the claimant is unable to perform any work in the national economy.

20 C.F.R. § 404.1520(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).[1] If the claimant cannot return to prior work, the Commissioner bears the burden of showing other work the claimant can do. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

---

[1] If a claimant's impairments do not meet or equal a listed impairment, as determined at Step Three, the ALJ determines the claimant's "residual function capacity" on the basis of "all of the relevant medical and other evidence" in the claimant's case record. 20 C.F.R. § 404.1520(e). *See also* 20 C.F.R. § 404.1545(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations."). The ALJ uses the residual function capacity at Step Four to determine if the claimant can perform past relevant work and at Step Five to determine if the claimant can adjust to other work. 20 C.F.R. § 404.1520(e).

4

When a claimant seeks to establish a disability through testimony concerning "pain or other subjective symptoms," the Eleventh Circuit applies a test requiring "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so," and "[f]ailure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1998)).

If the record shows the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms, the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). The ALJ must consider all of the record, including objective medical evidence, the claimant's history, and statements of the claimant and the claimant's doctors, and the ALJ may consider factors like the claimant's daily activities; the location, duration, frequency, and

intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of the claimant's medication; and treatments other than medication. *Id.* Last, the ALJ must examine the claimant's symptom-related testimony in light of the other evidence, considering whether there are "inconsistencies or conflicts between those statements and the record." *Id.*

Relevant here, on March 27, 2017, the SSA amended its regulations governing the consideration of disability determinations rendered by other governmental and nongovernmental entities. The regulations state that "a decision by any other governmental agency or a nongovernmental entity about whether [a claimant] is disabled, blind, employable, or entitled to any benefits" does not bind the SSA. 20 C.F.R. § 404.1504. Significantly, in claims filed on or after March 27, 2017, the SSA

> will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits. However, [the SSA] will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the SSA receives] as evidence in [the claimant's] claim in accordance with § 404.1513(a)(1) through (4).

*Id.* This 2017 regulation reflects a shift from prior law, which required the ALJ to analyze the decision of the other government agency. *See, e.g.*, *Noble*, 963 F.3d at

1324;[2] *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984); *Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009).

## IV.

In this case, at Step One, the ALJ determined that Taylor last met the insured status requirements of the Act on June 30, 2019, and that Taylor had not engaged in "substantial gainful activity" from her alleged onset date through her last insured date. R. 172. At Step Two, the ALJ found that Taylor had major depressive disorder, a severe impairment. *Id.*[3] At Step Three, the ALJ determined that Taylor did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments. R. 173. The ALJ found that while Taylor had moderate limitations in understanding, remembering, applying information, interacting with others, concentrating, persisting, and/or maintaining pace and a mild

---

[2] In *Noble*, the Eleventh Circuit recognized "some tension in [its] precedent" regarding the role another agency's disability decision should play in an ALJ's review of a Social Security claim. 963 F.3d at 1325. The Circuit harmonized this precedent by holding that, at least under the former SSA regulations, courts should "consider two questions in deciding whether an ALJ who declined to follow another agency's decision that a claimant was disabled nevertheless properly considered that decision." *Id.* at 1324, 1330. First, the court must "ask whether the ALJ's decision shows that she considered the other agency's decision." *Id.* If the ALJ did not discuss the other agency's decision, the court must remand the case to the Commissioner. *Id.* If the ALJ did discuss the other agency's decision, the court must ask "whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision." *Id.* If there is such evidence in the record, the court should affirm. *Id.*

[3] The ALJ did not deem Taylor's bilateral plantar fasciitis, left-knee pain syndrome, or right-knee derangement severe impairments due to the "absence of objective medical abnormalities" like "medical signs and laboratory findings." R. 173.

limitation in adapting or managing herself, her condition was not "of such severity that it could reasonably be expected to give rise to disabling limitations." *Id.*

The ALJ commented that Taylor's longitudinal treatment records "document[ed] that [Taylor] experienced situational depression, but the progress notes reflect[ed] that she was able to maintain an overall normal mental status." *Id.* The ALJ then turned to evaluations by doctors whom Taylor visited in 2018 and 2019, as well as comments from Taylor's godfather and social worker. R. 174. Walking through the records and reports, the ALJ noted that while Taylor's depression likely interfered with her ability to handle stress, manage life changes, and concentrate, Taylor also could manage her personal care, including her meals, laundry, driving, and finances. R. 174–75. The ALJ also determined that Taylor's medical evidence did not establish a history of a mental disorder for at least two years and that Taylor received treatment, including therapy. R. 175. The ALJ remarked that no treating or examining physician of Taylor's had opined that she had impairments, singly or combined, that medically equaled a listing. R. 176.

Taking these findings together with the record, the ALJ determined that Taylor had the residual function capacity to perform "a full range of work at all exertional levels but with . . . non-exertional limitations." R. 177. These limitations included that Taylor could "perform unskilled work activity" with two-hour periods of concentration, that Taylor "should have no more than occasional workplace

changes and direct interaction with the general public," and that she could have "occasional interaction" with coworkers throughout the day. *Id.* The ALJ noted that Taylor "ha[d] been determined 80% disabled by the Department of Veterans Affairs" but that the ALJ "[was] not bound by the decisions of the ratings of disability from the [VA] and other agencies," citing 20 C.F.R. § 404.1504. R. 178. The ALJ acknowledged that she was still "required to evaluate all the evidence in the case record that may have a bearing on the decision of disability, including the decisions from other governmental or non-governmental agencies." *Id.* (citing 20 C.F.R. § 404.1512(b)(5)).

Reviewing Taylor's physical conditions, the ALJ cited evaluations from several doctors who observed and/or x-rayed Taylor's feet and knees. *Id.* The ALJ stated that she considered the medical signs and laboratory findings, statements and other information provided by Taylor, and opinions from her treating or examining doctors and ultimately concluded that Taylor's "physical condition [did] not preclude [her] from performing work at all exertional levels." *Id.* Turning to Taylor's cognitive abilities, the ALJ reviewed treatment records and opinions from an evaluating nurse and a social worker, who commented that Taylor's concentration "was average" or "sufficient." *Id.* The ALJ also deemed relevant Taylor's abilities to shop at Walmart and practice hobbies like dance and basketball. *See id.*

9

Proceeding to Step Four, the ALJ noted that Taylor had previously worked in military service as a culinary specialist and that this constituted "substantial gainful activity." R. 179. However, the vocational expert present at the hearing testified that Taylor's residual function capacity would prevent her from doing this work again. *Id.* Accordingly, the ALJ concluded that Taylor was unable to perform her past relevant work. *Id.*; R. 326.

At Step Five, the ALJ stated that Taylor's "ability to perform work at all exertional levels was compromised by non-exertional limitations." R. 180. At the hearing, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with Taylor's age, education, work experience, and residual function capacity. *Id.*; R. 326. The vocational expert testified that Taylor could perform the jobs of hand packager (approximately 80,000 jobs in the national economy), dishwasher (approximately 100,000 jobs in the national economy), and laundry laborer (approximately 60,000 jobs in the national economy). R. 180, 327. The ALJ then added to the hypothetical "additional limitations of no climbing ladders, ropes, [or] scaffolds," "[n]o kneeling or crawling," "[n]o more than occasional crouching," and "[n]o unprotected heights or hazardous machinery" and asked the vocational expert if any of the previously listed jobs would still be available. R. 327. The vocational expert replied that the hand packager and

dishwasher jobs would remain "[i]n the same numbers," and that this hypothetical person could also perform the job of garment sorter. R. 327–28.

Because the ALJ found that Taylor "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," including the above roles, the ALJ concluded that Taylor was "not disabled" under the Act. R. 180.

## V.

Taylor asserts that the ALJ failed to give her VA disability rating "proper weight" and that the ALJ's decision was not based on substantial evidence. Doc. 12 at 2. The court addresses these contentions in order.

### A.

Taylor first argues that the court must reverse the ALJ's decision because the ALJ did not give sufficient weight to Taylor's VA disability rating. Doc. 12 at 2, 16. In support, Taylor principally cites *Daniels v. Berryhill*, No. 3:16-CV-412-WC, 2017 WL 2177336, at *4 (M.D. Ala. May 17, 2017), which discussed and applied a former rule in the Eleventh Circuit that VA disability ratings constitute "evidence that must be considered and entitled to 'great weight.'" *Daniels*, 2017 WL 2177336, at *4 (citing *Brady*, 724 F.2d at 921; *Bloodsworth*, 703 F.2d at 1241; *Kemp*, 308 F. App'x at 426). *See also Noble*, 963 F.3d at 1324, 1330. *Daniels* dealt with the SSA regulations in effect prior to March 2017, and the district court in that case noted

11

that the ALJ gave "little weight" to the VA rating at issue solely because of "a difference in governmental agency procedure," rather than "a lack of tangible evidence in the record." *See id.* at *1, *4. As mentioned, for claims filed on or after March 27, 2017—such as Taylor's—ALJs need not provide analyses regarding the decisions of other agencies but instead must consider the evidence underlying those decisions. 20 C.F.R. §§ 404.1504, 416.904.

The Eleventh Circuit has referenced the amended regulations and noted that an ALJ no longer must analyze a decision by another agency about whether a claimant is disabled but still must consider the evidence underlying that decision. *See Noble*, 963 F.3d at 1324 (comparing former and amended versions of 20 C.F.R. § 404.1504). Taylor does not argue that the newer version of 20 C.F.R. § 404.1504 is invalid or otherwise does not apply to her claim. *See generally* docs. 12, 14. And the SSA contends that, even if Taylor did challenge the validity of this regulation, the regulation "falls well within the agency's broad rulemaking authority." Doc. 13 at 7–8 (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984)).

Instead, Taylor appears to assert that Circuit case law referencing the former version of 20 C.F.R. § 404.1504 continues to apply to her case, and thus the ALJ erred by failing to give Taylor's VA rating "great weight." *See* doc. 14 at 5–6. But as the SSA points out, *see* doc. 13 at 7–8, *Noble* recognizes that the newer version

12

of 20 C.F.R. § 404.1504 applies to claims filed on or after March 27, 2017 within the Eleventh Circuit,[4] and an ALJ no longer must give "great weight" to agency determinations, particularly under the amended regulations—regulations that instruct the ALJ not to analyze the other agency's determination. *Noble*, 963 F.3d at 1324, 1330; 20 C.F.R. § 404.1504. Because Taylor filed her disability claim on November 8, 2018, the newer version of 20 C.F.R. § 404.1504 applies to her claim, and the ALJ was not required to analyze Taylor's VA disability rating. Instead, the relevant legal standard required the ALJ to consider the evidence underlying Taylor's VA rating, *see* 20 C.F.R. § 404.1504, and the ALJ did so.[5]

In particular, the ALJ noted that Taylor "ha[d] been determined 80% disabled by the Department of Veterans Affairs," but that the ALJ "[was] not bound by the decisions of the ratings of disability from the [VA] and other agencies" and was instead "required to evaluate all the evidence in the case record that may have a bearing on the decision of disability, including the decisions from other governmental or non-governmental agencies." R. 178 (citing 20 C.F.R.

---

[4] *See, e.g.*, *Williams v. Saul*, No. 5:20-CV-00479-RDP, 2021 WL 2716118, at *9 (N.D. Ala. July 1, 2021) (discussing difference in regulations for claims filed before or after March 2017 under *Noble*); *Pierce v. Comm'r of Soc. Sec.*, No. 5:19-CV-01544-HNJ, 2021 WL 1102439, at *3 n.2 (N.D. Ala. Mar. 23, 2021) ("The Social Security Administration revised its regulations regarding the consideration of medical evidence for all claims filed after March 27, 2017.").

[5] Further, even under Circuit precedent interpreting the older version of 20 C.F.R. § 404.1504, the hearing transcript and the ALJ's decision demonstrate that she considered the VA's disability rating and, as discussed in this opinion, substantial evidence supports the ALJ's decision to depart from the VA's determination that Taylor was disabled. *See Noble*, 963 F.3d at 1325.

§ 404.1512(b)(5)). The ALJ reviewed evaluations from several of Taylor's doctors, who observed or x-rayed her feet and knees, and stated that she considered the medical and laboratory findings, information provided by Taylor, and opinions from her treating or examining doctors. *Id.* The ALJ also reviewed opinions from an evaluating nurse and a social worker,[6] discussed Taylor's longitudinal treatment records documenting her history of depression, and considered comments from those familiar with Taylor's conditions. R. 172–74, 178 (citing Ex. 1A, 1F, 2F, 3E, 3F, 5F). Based on this evidence, the ALJ determined that Taylor's physical impairments "[were] not so much as to prevent ambulation, reaching, orthopaedic and postural maneuvers" and that Taylor's "physical condition [did] not preclude [her] from performing work at all exertional levels." R. 178. Moreover, the ALJ found that Taylor could maintain adequate concentration to work with occasional interaction with coworkers, no direct interaction with the public, and occasional changes in her work environment. *Id.* Recognizing that Taylor had non-exertional limitations, the ALJ asked the vocational expert if Taylor could perform different jobs in the national economy based on Taylor's profile and residual function capacity. R. 179–80. On

---

[6] Here, the ALJ explained: "In terms of the claimant's cognitive abilities, Nurse Oexibedi-Ahanoth stated that the claimant's concentration was average, and Social Worker Scott related that the claimant's attention and concentration were sufficient, which would reasonably allow the claimant to maintain adequate attention and concentration to perform basic unskilled work activity within a competitive work environment. Additionally, the claimant's ability to engage in various activities, such as shopping at Walmart or engaging in various hobbies, as noted above, demonstrates that she is able to be around others." *Id.*

14

the basis of the vocational expert's affirmative answer and examples, the ALJ concluded Taylor was not disabled under the Act. *Id.*

Given the ALJ's assessment of the evidence underlying the VA determination, including medical records and opinions regarding Taylor's physical and cognitive conditions, and the ALJ's express recognition of the VA rating in her analysis, the court finds that the ALJ properly considered Taylor's VA rating to the extent required under the current legal standard and that the ALJ's disability determination was supported by substantial evidence. *See Noble*, 963 F.3d at 1325, 1330.

B.

Taylor also argues that the ALJ's decision is not supported by substantial evidence because the ALJ "relied on Vocational Expert testimony that was not based on a correct or full statement of [Taylor's] mental limitations and impairments." Doc. 12 at 18. In particular, Taylor contends that the hypothetical question the ALJ posed to the vocational expert did not accurately describe Taylor's depression and incorrectly assumed that she did not have any non-exertional limitations. *Id.* The parties agree that, to rely on a vocational expert's testimony, an ALJ must "pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). An ALJ also has "an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the

15

[Dictionary of Occupational Titles] and resolve them." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018).

In her decision denying benefits, the ALJ found that Taylor had the residual function capacity to perform "a full range of work at all exertional levels but with . . . non-exertional limitations" that included that Taylor could "perform unskilled work activity" with two-hour periods of concentration, "should have no more than occasional workplace changes and direct interaction with the general public," and could work with "occasional interaction with coworkers." R. 177. The ALJ further stated that she based her hypothetical question to the vocational expert on Taylor's "age, education, work experience, and residual function capacity" in order to "determine the extent to which Taylor's [non-exertional] limitations eroded the occupational base of unskilled work at all exertional levels." R. 180.

The ALJ's question thus aligned with the ALJ's determination regarding Taylor's residual function capacity. Specifically, the ALJ asked the vocational expert how to classify Taylor's past work; the vocational expert responded that Taylor worked as a culinary specialist in military service, which the vocational expert reported has a DOT code of 313.361-014 and a "Specific Vocational Preparation" rating of 7. R. 326. The ALJ then asked the vocational expert:

> Assume for purposes of the first hypothetical, an individual of the claimant's same vocational background who does not have any exertional limitations. Let's say—let's limit her to unskilled work with the ability to attend and concentrate for two-hour periods at a time. No

16

>  more than occasional workplace changes. No more than occasional direct interaction with the general public. And work that can be around co-workers throughout the day, but with only occasional interaction with co-workers. Would there be jobs in the competitive workplace that such a hypothetical individual could perform?

R. 326–27. The vocational expert answered that this hypothetical person could perform the jobs of hand packager, dishwasher, and laundry laborer. R. 327. When the ALJ added to this hypothetical question limitations related to climbing, kneeling, crawling, crouching, heights, and hazardous machinery, the vocational expert stated that this hypothetical person could still perform the jobs of hand packager and dishwasher and could also work as a garment sorter. R. 327–28.

Relying on this testimony, the ALJ concluded that Taylor "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" and was thus not disabled under the Act. R. 180.[7] For her part, Taylor asserts that the ALJ's question did not accurately describe Taylor's depression and assumed that she did not have any non-exertional limitations. Docs. 12 at 18; 14 at 6. Taylor claims that the ALJ "assumed the VA limitations including disabling depression did not exist." Doc. 14 at 6. However, neither the hearing transcript nor the ALJ's decision demonstrates that the ALJ ignored Taylor's

---

[7] The ALJ also stated that she "determined that the vocational expert's testimony [was] consistent with the information contained in the *Dictionary of Occupational Titles*, and that any actual or apparent conflicts [had] been adequately resolved." R. 180.

17

depression or the evidence on which the VA relied to make its determination, including with respect to Taylor's depression.

Taylor does not identify which non-exertional limitations the ALJ omitted, making it difficult for the court to discern how, if at all, the ALJ went wrong in posing the hypothetical. Moreover, the ALJ summarized Taylor's limitations based on the evidence she reviewed, including treatment records and medical opinions underlying the VA rating, when she asked the vocational expert about jobs that a person with Taylor's limitations could perform. Accordingly, the ALJ could rely on the vocational expert's testimony, and the ALJ's decision was supported by substantial evidence.

## V.

As explained above, the ALJ applied the proper legal standard, and her decision was supported by substantial evidence. As such, the ALJ's decision must be affirmed. The court will enter a separate order in accordance with this opinion.

**DONE** the 15th day of October, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE